IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSE ROJAS,

        Plaintiff,

v.                                          Case No. 13-3073-JTM

JAMES HEIMGARTNER,

        Defendant.

MEMORANDUM AND ORDER

This case comes before the court on defendant James Heimgartner's Motion for Summary Judgment (Dkt. 12), filed on May 13, 2014. Having reviewed the briefs, the court is prepared to rule. The court finds the following material facts undisputed.

**I. Factual Background**

Plaintiff Jose Rojas is a Mexican citizen currently residing at El Dorado Correctional Facility (EDCF) in El Dorado, Kansas. He has been lawfully committed to the custody of the Kansas Department of Corrections (KDOC) since August 26, 1987. Defendant James Heimgartner is the Warden of EDCF.

In December 1997, Rojas submitted a KDOC Change of Religion form, changing his professed religion from Jehovah's Witness to "Native American." KDOC internal management policy allows those inmates professing "Native American" as their religion to wear white bandanas during group worship services. Apart from this accommodation, all inmates are prohibited from wearing bandanas throughout EDCF regardless of their religion. KDOC policy allows religious inmates to wear symmetrical

kufi caps or tams throughout EDCF. However, the headwear may only be black in color.

On May 5, 2011, Rojas submitted a "Request for Accommodation of Religious Practice" form, seeking permission to wear "religious head wear/bandana." Prison officials received fifteen additional requests from Native American worshipers at EDCF that month, all identical to Rojas's. A KDOC review found that ten of these sixteen requests were made by confirmed gang members and one was from a suspected gang member. These individuals belonged to two recognized security threat groups.

On July 19, 2011, Gloria Geither, KDOC Diretor of Religious Programs, responded to Rojas's request. Geither noted that prison policy only permitted the wearing of bandanas during group worship service, and she directed Rojas to the facility chaplain for further assistance.

Rojas then submitted a grievance to Warden Heimgartner requesting permission to wear bandanas of many different colors at any time throughout EDCF. Heimgartner denied Rojas's request. Rojas appealed to the Secretary of Corrections, who upheld Heimgartner's decision.

On April 17, 2013, Rojas filed suit against Heimgartner in his official capacity. Rojas claims Heimgartner violated his First and Fourteenth Amendment rights to exercise his religion, as well as his Fourteenth Amendment right to equal protection. Rojas also alleges a violation of the American Indian Religious Freedom Act, 42 U.S.C. § 1996.

**II. Legal Standard – Motion for Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove the nonmovant's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987). To negate summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); FED. R. CIV. P. 1.

## III. Analysis

*A. Rojas's Free Exercise Claim*

Rojas alleges that EDCF's dress policy enforced by Heimgartner violates his right to exercise the Native American religion. Specifically, he argues that adherents of other religions are allowed to wear headwear at all times anywhere in EDCF in the exercise of their faith, so Heingartner's refusal to allow him to wear bandana headbands of all colors at all times in EDCF violates his First Amendment right to free exercise.

Heimgartner argues that the prison maintains a neutral policy against colorful headwear and a prohibition against bandana headbands regardless of the inmate's religion. He states that kufis and tams are the only religious headwear allowed, and these are available only in black. He argues that the policy is related to the penological interest of safety. Specifically, Heimgartner believes that gang-affiliated inmates might use the colors or the knots of the bandanas to communicate in code.

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials charged with complex duties arising from administration of the penal system. *Pell v. Procunier,* 417 U.S. 817, 822 (1974). Recognizing that federal courts are ill-equipped to deal with the complexities of prison administration, the U.S. Supreme

Court has accorded great deference to determinations of prison officials and fashioned "a lesser standard of scrutiny . . . in determining the constitutionality of the prison rules." *Turner v. Safley,* 482 U.S. 78, 81 (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89; *O'Lone,* 482 U.S. at 349.

"In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Kay v. Bemis*, 500 F.3d 1214, 1218-19 (10th Cir. 2007). First, the plaintiff must show that a prison regulation substantially burdens a sincerely-held religious belief. *Id*. Second, prison officials bear "the relatively limited burden of identifying the legitimate penological interest that justified the impinging conduct." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007) (internal quotations omitted).

A number of factors are relevant in determining whether a challenged regulation is reasonable. The factors to be considered are: (1) whether there is a rational relationship between the regulation and the legitimate government interests asserted, (2) whether the inmates have alternative means to exercise the right, (3) the impact that accommodation of the right will have on the prison system and (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. *Turner,* 482 U.S. at 89–90.

Heimgartner does not challenge the sincerity of Rojas's belief in the Native America religion. The prison policy clearly burdens Rojas's exercise of his beliefs by restricting to a time and place his ability to wear a bandana headband, which is a sacred

5

object representing the cosmic circle concept of Rojas's faith. However, Heimgartner argues that he identified a legitimate penological safety interest in denying Rojas's grievance. The court must assess this interest under the factors set forth above.

First, the court finds a rational relationship exists between EDCF's dress regulation and the interest of safety asserted by Heimgartner. Several inmates claiming the Native American religion, including Rojas, filed identical requests to wear colorful bandanas at the same time. Upon inspection, officials at EDCF determined that several of the inmates requesting to wear bandanas were former or suspected gang members. These officials, including Heimgartner, understand that gang members often communicate their allegiances and other messages with articles of clothing, including bandanas. Although the allowance for kufis and tams may present certain security risks, the court recognizes that the symmetry and uniformity in these articles presents a lower risk than colorful bandanas with knots.

Rojas argues that he and the others requested these headbands to help them stay away from gang activity by having the constant reminder of their religious faith. Although the court recognizes Rojas's admirable goal, this cannot negate Heimgartner's safety concern. Heimgartner does not have to allow Rojas's request and then wait to see if his fears or Rojas's aspirations prove out. The court does not require prison officials to demonstrate causal relationship between the prisoners' religious practices and existing institutional problems. Such a standard would "seriously interfere with the ability of corrections officials to anticipate security problems and to adopt innovative solutions to those problems." *Standing Deer v. Carlson*, 831 F.2d 1525, 1528 (9th Cir. 1987) (internal

quotations and citations omitted). To ensure appropriate deference to the judgment of prison officials, the court restricts its inquiry to considering whether the challenged regulation is logically connected to legitimate penological concerns. *Id.* The court concludes that the regulation at issue here fits this standard.

Rojas has an alternative means of exercising his religious custom. He is allowed to wear his sacred white bandana headband during Native American worship. Other alternatives to the policy adopted by prison officials may also exist. However, "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner,* 482 U.S. at 90–91. Rojas has not pointed to an obvious, easy alternative that fully accommodates his rights at *de minimis* cost to penological interests. *Id.* at 91. To accommodate the full right of free exercise sought by Rojas would require constant monitoring by prison guards to prevent secret messages from being transmitted. The court acknowledges the potential safety hazards such an accommodation might pose for prison staff and other inmates.

In sum, the court holds that EDCF's dress policy enforced by Heimgartner in denying Rojas's religious accommodation request is rationally related to a legitimate penological interest. Accordingly, Heimgartner is entitled to judgment as a matter of law on this claim.

### B. Rojas's Equal Protection Claim

In addition to his First Amendment claims, Rojas claims he has been denied equal protection by reason of treatment different from that afforded to other religious

groups. Heimgartner once again relies on the penological interest of safety in his defense.

In the prison context, "the proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is reasonably related to legitimate penological interests." *Washington v. Harper*, 494 U.S. 210, 223 (1990) (citing *Turner*, 482 U.S. at 107).

Having already analyzed the facts under this standard in the context of Rojas's First Amendment claim, the court need not repeat this analysis here. Heimgartner's refusal to grant Rojas's request was rationally related to safety. The court grants Heimgartner summary judgment on this claim.

*C. Rojas's Claim Under the American Indian Religious Freedom Act, 42 U.S.C. § 1996*

Rojas also claims Heimgartner's enforcement of KDOC's policy violates the American Indian Religious Freedom Act. The Act states in its entirety:

> On and after August 11, 1978, it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

American Indian Religious Freedom Act (AIRFA), Pub. L. 95–341, 92 Stat. 469, 42 U.S.C. § 1996 (1978).

The AIRFA does not create a cause of action or any judicially enforceable individual rights. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455 (1988).

8

For this reason, Rojas fails to state a legal claim. Accordingly, the court grants Heimgartner summary judgment on this claim.

## IV. Conclusion

The court concludes that the dress regulation at issue is reasonably related to legitimate penological interests. Therefore, the regulation does not violate Rojas's free exercise or equal protection rights. The court also holds that Rojas fails to state a claim under the American Indian Religious Freedom Act. For these reasons, the court grants summary judgment to Heimgartner.

IT IS THEREFORE ORDERED this 7th day of August, 2014, that Heimgartner's Motion for Summary Judgment (Dkt. 12) is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE